**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **REYNALDO MIRANDA-ALBINO,**<br>    **Plaintiff**<br><br>    **v.**<br><br>**FERRERO, INC., d/b/a FERRERO CARIBE,**<br>    **Defendant** | **Civil No. 04-2340 (JAF)** |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Reynaldo Miranda-Albino, filed a complaint on December 6, 2004, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et. seq. and Puerto Rico law 29 P.R. Laws Ann. § 271 et seq. (**Docket No. 1**). The Defendant moves for summary judgment as a matter of law (**Docket No. 6**). Plaintiff, of course, opposes the motion **(Docket No. 15)**. The motion for summary judgment was referred to the undersigned for report and recommendation on April 12, 2005 (**Docket No. 20**).

### I.     Procedural Background and Facts

The complaint alleges that plaintiff Reynaldo Miranda-Albino (hereafter "Miranda"), was employed by the defendant Ferrero, Inc., d/b/a Ferrero Caribe (hereafter "Ferrero"), from October 23, 2000, to February 5, 2003. Miranda alleges that Ferrero violated the provisions of the Fair Labor Standards Act and Puerto Rico Law 379 by not compensating him for employment in excess of the prescribed hours in a workweek and for failing to pay him for meal periods. Miranda alleges that Ferrero is liable to him for unpaid overtime compensation and liquidated damages.

In support of the motion for summary judgment Ferrero submitted a statement under penalty of perjury signed by Wanda Torres-Rivera (hereafter "Torres"), who has been the Human Resources Manager for Ferrero Caribe since December 4, 1994 (**Docket No. 7**). Miranda moved to strike the statement on the grounds that she was not his supervisor and thus has no personal knowledge as to whether he was a direct delivery salesperson (**Docket No. 16**). The Court noted the objection to the affidavit, and indicated that the objections

would be under advisement when the motion for summary judgment was finally addressed on the merits (**Docket No. 18**).  Miranda contests all the facts based upon Torres' statement. In the same vein,  Ferrero asserts that Miranda's statement in opposition to the Motion for Summary Judgment contains general, conclusory allegations.

In her statement under penalty of perjury, Torres states that based upon her personal knowledge and upon Miranda's employee record, Miranda was employed as a "direct delivery salesperson" (**Docket No. 6**, Ex.).  His primary duty was outside sales and related duties.  *Id.*  He performed all of his duties from a refrigerated case van truck and was on the road most of the time.  *Id.*  The statement recites Miranda's job duties (as  direct delivery sales person) as set forth in  Ferrero's Job Description.  *Id.*; **Docket No. 13**.  The job description summary is as follows:

> The incumbent is responsible for visiting all of the customers assigned in his territory in order to promote and sell the product line assigned.  Maximize the sales volume and be able to meet and/or surpass his established sales quota. Render quality service to his customers.  In addition, he is responsible for verifying the existing inventory at each customer (business), supply them with merchandise, and collect all overdue invoices.

*Docket No. 13.*

The job description also states that there will be daily sales contact with customers (**Docket No. 13**).  Said job description  was signed by Miranda on October 20, 2000 (**Docket No. 13**).  In her statement, Torres also indicates that Miranda was customarily and regularly engaged in sales duties, which by the very nature of his job had to be performed away from Ferrero administrative place of business (**Docket No. 6**, Ex.).

Miranda submitted an unsworn declaration under penalty of perjury (**Docket No. 17**).  He states that he worked at Ferrero driving a truck and making deliveries to Ferrero clients. *Id.*  He began his day at 6:00 a.m. every day by going to Ferrero to pick up the truck, stock it with merchandise and then make deliveries on the assigned route.  *Id.*   The route was assigned by his supervisor.  *Id.*  He wore a company uniform and drove a company truck.  *Id.* He states that his employer controlled his working hours because he carried a company

cellular telephone at all times, which was used to telephone him with instructions on visiting certain establishments. *Id.* He states that he did not exercise independent judgment and had no discretion on how to spend his working day, since he was obliged to check in with his supervisor or the supervisor's secretary on a daily basis to advise of the hours he worked, the establishments he visited and the merchandise he delivered. *Id.* He states that when Ferrero ordered, he worked weekends and attended special company events. *Id.* Miranda states that he never engaged in sales and his job was to drive the company truck and to represent merchandise in the establishments he visited during the day, following his supervisor's instructions. *Id.*

## II. Analysis

The defendants move for summary judgment asserting it is uncontested, that at all times plaintiff was employed by Ferrero, he was employed as an outside salesperson. Ferrero contends that because Miranda held the position of an outside salesperson he was exempt from the federal and local provisions requiring overtime pay and payment for meal periods. Miranda responds that he did not perform the duties of an outside salesman and as a result the motion should be denied.

### A. Legal Standard

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Seaboard Sur. Co. v. Greenfield Middle Sch. Bldg. Comm.,* 370 F.3d 215, 218 (1st Cir. 2004). When ruling on a motion of summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir. 2004). While carrying out that task, the Court safely can ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir. 2000) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990)).

An issue is "genuine" for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vásquez v. López-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

### B.     Fair Labor Standards Act

The Fair Labor Standards Act (hereafter "FLSA") requires employers to pay employees overtime for hours worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1). Its overtime provisions establish the general rule that employees must be compensated at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours. *De Jesús-Rentas v. Baxter Pharmacy Services Corp.*, 400 F.3d 72, 74 (1st Cir. 2005); 29 U.S.C. § 207(a)(1). Certain employees are exempt from this requirement. 29 U.S.C. § 213(a)(1). In this case the defendant contends that plaintiff, as an outside salesman, is exempt from overtime pay and payment for meal periods. The employer, in an FLSA case, here Ferrero; bears the burden of establishing that its employees are exempt. *De Jesús-Rentas*, 400 F.3d at 74. Because of the remedial nature of the FLSA, exemptions are to be narrowly construed against the employers seeking to assert them. *It.* at 74 (citations and internal quotation marks omitted).

Employees categorized as exempt include "any employee employed. . .in the capacity of outside salesman (as such term [is] defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. §§ 213(a)(1).  Accordingly, regulations in effect during the relevant time frame apply, that is Miranda's dates of employment from October 23, 2000 to February 5, 2003[1]. *See, e.g., Clark v. United Emergency Animal Clinic, Inc.*, 390 F.3d 1124, 1125 n. 1 (9th Cir. 2004) (citing to statutory and regulatory overtime-pay provisions in effect during plaintiffs' employment).

During the relevant period, applicable regulations defined an "outside salesman" as any employee:

> (a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:  (1) Making sales within the meaning of section 3(k) of the act, or (2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
> (b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer; Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. §§ 541.500 (2000 - 2004)[2].

The regulations provide that work performed "incidental to and in conjunction with the employee's own outside sales or solicitation" includes not only incidental deliveries and collections which are specifically mentioned in § 541.500(b), but also any other work performed by the employee in furthering his own sales efforts. Work performed incidental to and in conjunction with the employee's own outside sales or solicitations would include,

---

[1] The limitation period for FLSA overtime pay claims is two years from the date of accrual of the cause of action unless the plaintiff can demonstrate a willful violation.  Under that scenario the limitation period is three years.  See 29 U.S.C. § 255(a).  The issue of the lapsing of the limitation period has not been raised.  The complaint was not filed until December 6, 2004, and it may be that certain claims are barred by the applicable limitation period.  That is, willful claims before December 6, 2001, may be barred; and non-wilful claims before December 6, 2002 may be barred.

[2] The applicable sections of the C.F.R. were amended, effective August 23, 2004.  Those amendments have no bearing on this case.  Hereafter, all C.F.R. citations alluded to, are those in effect prior to August 23, 2004.

among other things, the writing of his sales reports, the revision of his own catalog, the planning of his itinerary and attendance at sales conferences. 29 C.F.R. § 541.503.

The regulations also contain provisions or description for the position of "driver salesmen"[3]. 29 C.F.R. § 541.505. The definition reads as follows: "Where drivers who deliver to an employer's customers the products distributed by the employer also perform functions concerned with the selling of such products, and questions arise as to whether such an employee is employed in the capacity of outside salesman, all the facts bearing on the content of the job as a whole must be scrutinized to determine whether such an employee is really employed for the purpose of making sales rather than for the service and delivery duties which he performs and, if so, whether he is customarily and regularly engaged in making sales and his performance of nonexempt work is sufficiently limited to come within the tolerance permitted by §541.500."  29 C.F.R. 541.505(a).  "The employee may qualify as an employee employed in the capacity of outside salesman if, and only if, the facts clearly indicate that he is employed for the purpose of making sales and that he is customarily and regularly engaged in such activity within the meaning of the Act and this part."  *Id.*  The employee must be a salesman by occupation. *Id.* All of the duties performed by the employee must be considered, and while the time devoted to the various duties is important, it is not necessarily controlling.  *Id.*  Additionally, whether an employee qualifies as an outside salesman depends on the content of the job as a whole and not on its title or designation or the kind of business in which the employer is engaged.  29 C.F.R. § 541.505(b).

Sub-paragraph (c) discusses issues that arise when there is an established customer base.  It states:

> One source of difficulty to determining the extent to which a route driver may actually be engaged in 'making sales' arises from the fact that such a driver often calls on established customers day after day or week after week, delivering a quantity of his employer's products at each call. Plainly, such a driver is not 'making sales' when he delivers orders to customers to whom he did not make the initial sale in amounts which are exactly or approximately

---

[3] Neither party saw fit to refer to this provision of the Regulations.

> prearranged by customer or contractual arrangement or in amounts specified by the customer and not significantly affected by solicitations of the customer by the delivering driver. Making such deliveries, as well as recurring deliveries, the amounts of which are determined by the volume of sales by the customer since the previous delivery rather than by any sales effort of the driver, do not qualify the driver as an outside salesman nor are such deliveries and the work incident thereto directed to the making or soliciting of sales by the driver so as to be considered exempt work.

29 C.F.R. § 541.505(c).

Section 541.505(d) contrasts a route driver who does not make sales at the locations he visits (and is therefore not covered by the exemption for outside salesmen) with a route driver who takes orders or obtains commitments for the products he delivers (and is therefore covered by the exemption):

> [A] route driver primarily engaged in making deliveries to his employer's customers and performing activities intended to promote sales by customers, including placing point-of-sale and other advertising materials, price stamping commodities, arranging merchandise on shelves or in coolers or cabinets, rotating stock according to date, and cleaning and otherwise servicing display cases is not employed in the capacity of outside salesman by reason of such work. Such work is nonexempt work for purposes of this part unless it is performed as an incident to or in conjunction with sales actually made by the driver to such customers. If the driver who performs such functions actually takes orders or obtains commitments from such customers for the products he delivers, and the performance of the promotion work is in furtherance of his own sales efforts, his activities for that purpose in the customer's establishment would be exempt work.

29 C.F.R. § 541.505(d).

Ferrero argues that the uncontested material facts are that as a matter of law Miranda does not have a valid cause of action because at all times he was employed as an outside sales employee. Ferrero argues that Miranda qualified as an outside sales employee based upon the following: his primary duty was to make sales and obtain order contracts in his assigned sales route; he was customarily and regularly away from his employer's place of business; he performed most of his duties in a refrigerated "cash-van" along his assigned sales route; his hours of work were devoted to make sales to the clients assigned to his sales territory and to perform sale related duties; and, at all times while employed by Ferrero, Miranda performed direct sales work and work performed incidental to and in conjunction with his own outside

sales and solicitations, including incidental deliveries and collections.  Ferrero considers a factor in its favor that  Miranda failed to address the job duties and responsibilities included in his own job description and did not provide evidence to show that the duties he performed were different than those assigned to him.

Miranda argues that he did not work as an outside salesman but rather drove a truck and delivered merchandise to Ferrero's customers.  He further argues that he was also responsible for stocking, rotating and checking the expiration date of the merchandise that he delivered to the different establishments. Miranda asserts that he did not exercise independent judgment or discretion as to matters of real importance and consequence, something Ferrero argues is irrelevant.  Miranda stated that he was directly supervised and was called on a daily basis by this supervisor's secretary.  He was told which establishments to visit and what merchandise to deliver.  Miranda asserts he was also obliged to check in with his supervisor or the secretary, daily; to report on the hours worked, the establishments visited and the merchandise delivered.    In the case at bar, summary judgment is inappropriate for one simple reason.  There remain genuine issues of material fact, the most glaring that of defining whether Miranda's duties, as performed, were those of outside salesman versus truck driver/delivery person.  Contrast Miranda's statement that he "never engaged in sales" and his job was to "drive the company truck" and to "replenish the merchandise" in the establishments that he visited during the day with Torres' statement asserting that "Miranda's primary duty was, at all times, while employed by Ferrero Caribe, doing outside sales and related duties."   It is evident that Miranda's status remains at issue.

His job description indicates that he was a "Direct Delivery Sales Person".  The title indicates a person who both delivers and sells items.  The job description indicates that the "direct delivery sales person" was responsible for promoting and selling the product line assigned, providing service to the customers, stocking merchandise and collecting overdue invoices.  The description indicates that the "direct delivery sales person" was required to request the approval for sales from the Customer Service Department.  On the other hand, the

description indicates that the employee would contact new customers, visit and make a presentation of the product line.  The employee was required to report to his supervisor on a daily basis on all sales, monies collected and  customers visited.  A factor considered is that whether Miranda's position qualifies as an outside salesman or not depends on the content of the job as a whole and not on its title or designation.  29 C.F.R. § 541.505(b).  Granted, Miranda signed the job description, but the date it was signed is October 20, 2000, three days before he began his employment with Ferrero on October 23, 2000.   Also, while the job description sounds as if it is an outside sales position, in actuality how a job is described on paper and what the job duties actually entail can be two very different things.  Miranda has given the Court his account of the job as he believes he actually performed it and his statement is that he did not perform sales.

It is Ferrero's burden to establishing that Miranda is an exempt employee.  At this juncture it is not clear if Miranda was employed for the purpose of outside sales or for the purpose of making deliveries to an established customer base.  "The employee may qualify as an employee employed in the capacity of outside salesman if, and only if, the facts clearly indicate that he is employed for the purpose of making sales and that he is customarily and regularly engaged in such activity within the meaning of the Act and this part."  29 C.F.R. § 541.505( ).  At this point in time the facts are not clear.  Accordingly summary judgment is inappropriate.

Based upon the foregoing it is RECOMMENDED that the Motion for Summary Judgment be DENIED as to the Fair Labor Standards Act claim.

  **C.**  **Working Hours and Days Act of Puerto Rico**

Miranda also brings a claim seeking compensation for overtime work and meal periods under Puerto Rico's Act No. 379 of May 15, 1948, as amended, P.R.Laws Ann. 29 § 271 *et seq*. (hereinafter "Working and Hours Days Act" ).  Ferrero moves for summary judgment on the basis that Miranda, as an outside salesperson, was exempt from the provisions of the Working and Hours Days Act.

The Working and Hours Days Act defines an employee as " every employee, workman, day laborer, artisan, laborer, clerk, shop clerk and every person employed for wages, salary, day wages, or any other form of compensation in any occupation, establishment, business, or industry, excepting traveling agents and peddlers." 29 P.R. Laws Ann. § 388. The Working and Hours Days Act excludes from the scope of its provisions traveling salesmen and peddlers. *Américo D. Miranda, Inc. v. Falcón*, 83 P.R.R. 708 (1961).  Traveling agents are considered as

> those employees that exercise the function of traveling salesmen and whose work consists of carrying out transactions involving the sale of products, services, or any other tangible or intangible goods in behalf of an employer, whether or not he intervenes personally in the distribution or delivery of the product, service or goods, including any work or service incidental or related to the main sales activity. Usually, these people work outside of headquarters; they do not return to it daily; nobody has the daily supervision of their activities once they go out to sell; they use their own discretion as to the effort and time they should devote to their work, and the very nature of their work prevents the determination of real and effective hours worked every day

29 P.R. Laws Ann. § 388.

Peddlers are considered as "[t]hose employees who are engaged in the sale, offering for sale, the requesting, collection or distribution of any article, product or merchandise, or publicity material, in the street, in any public place, or from door to door, without the employer having any control over the hours of work it will take such employee to perform such activities outside the employer's establishment. *Id.*

Ferrero contends that Miranda meets the statutory definition of "traveling agent" and "peddler" making summary judgment warranted.

Under Puerto Rico law the criteria as to what an outside salesman is, requires consideration of:  (a) that traveling salesmen carry all their work without direct supervision; (b) that they are the only ones that know their customers and the action which to the best of their judgment ought to be taken in maintaining and increasing said customers;  (c) that they render their services outside the office of the employer. *Maldonado v. International Business Machines Corp.,* 56 F.R.D. 452, 455 (D.P.R. 1972).  More so, "[t]he true reason for the existence

of the 'outside salesman' exemption is that due to the inherent nature of the salesman's function, the employer has no way of knowing the exact number of hours worked per day. *Id*. (citing *A. D. Miranda, Inc. v. Falcon*, 83 P.R.R. 708 (1961)).

Here, Miranda statement is that his route was assigned by his supervisor, and his employer controlled his working hours because he carried a company cellular telephone at all times, which was used to telephone him with instructions regarding visits to clients or merchandise delivery.  Also, Miranda claims he did not exercise independent judgment and had no discretion on how to spend his working day, since he was obliged to check in with his supervisor or the supervisor's secretary on a daily basis and keep them abreast of his work schedule, the establishments he visited and the merchandise he delivered.

The statement of Miranda that he was closely supervised is sufficient to defeat summary judgment, particularly in light of the requirement that the traveling salesmen carry all their work without direct supervision.  In viewing Miranda's statement as opposed to Torres' statement discussed above, it is clear that it remains an issue of fact as to Miranda's employment status under Puerto Rico law, specifically, whether is he or is he not an "outside salesman?"

Accordingly, It is RECOMMENDED that the Motion for Summary Judgment on the claim brought under the Working and Hours Days Act be DENIED.

### IV.    Conclusion

It is RECOMMENDED that Defendants' Motion for Summary Judgment (**Docket No. 6**) be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice.  Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986);

*Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, on this 16th day of August, 2005.

S/ **AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**